UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| TAMMY RAY BALLOU, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 6:24-cv-00032-GFVT |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| MARTIN O'MALLEY, *Commissioner of Social Security* | ) ) | **ORDER** |
| | ) | |
| Defendant. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Tammy Ray Ballou seeks judicial review of an administrative decision denying her claim for disability insurance benefits.  Ms. Ballou brings this action pursuant to 42 U.S.C. § 405(g), alleging error on the part of the administrative law judge who considered the matter.  The Court, having reviewed the record and for the reasons set forth herein, will **DENY** Ms. Ballou's Motion for Summary Judgment [R. 10] and **GRANT** the Commissioner's [R. 16].

**I**

Plaintiff Tammy Ray Ballou applied for Disability Insurance Benefits and Supplemental Security Income on August 2, 2021, alleging disability beginning October 31, 2016.  [R. 7 at 20.]  The Social Security Administration denied her claim on its initial review.  *Id.*  On reconsideration, the Social Security Administration again denied Ms. Ballou's claim.  *Id*.  Ms. Ballou then had a hearing before Administrative Law Judge Lauren Tran, who again denied Ms. Ballou's request for benefits.  *Id*. at 16.  On January 16, 2024, the Appeals Council denied review, leading Ms. Ballou to file a Complaint with this Court, seeking review under 42 U.S.C. § 405(g).  [R. 1.]  Both parties have now filed motions for summary judgment which are ripe for review.  [R. 10; R. 16.]

## II

To evaluate a claim of disability for Supplemental Security Income disability benefits, the ALJ conducts a five-step analysis. *See* 20 C.F.R. § 416.920. If at any step the ALJ can find that the claimant is disabled or not disabled, the analysis stops. *Id.* § 404.1520(a)(4). First, if a claimant is performing substantial gainful activity, she is not disabled. *Id.* § 404.1520(a)(4)(i). Second, if a claimant does not have a severe impairment or combination of impairments, she is not disabled. *Id.* § 404.1520(ii). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. *Id.* §§ 404.1520(a)(4)(iii), (d).

Before moving on to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity, which assesses her ability to perform certain physical and mental work activities on a sustained basis despite any impairment. *See id.* C.F.R. §§ 404.1520(e), 404.1545. Under the fourth step, an ALJ uses a claimant's RFC to determine whether she is still able to do his past work. *Id.* § 404.1520(a)(4)(iv). If so, she is not disabled. *Id.*

Finally, if an ALJ assesses a claimant's RFC in conjunction with her age, education, and work experience and finds that the claimant cannot adjust to perform other jobs available in significant numbers in the national economy, the claimant is disabled. *See Id.* §§ 404.1520(g), 404.1560(c). Through step four of the analysis, "the claimant bears the burden of proving the existence and severity of limitations caused by [her] impairments and the fact that [she] is precluded from performing [her] past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

**A**

The ALJ completed the five-step analysis to determine Ms. Ballou's disability status. [R. 7 at 21-30.] She first determined that Ms. Ballou had not engaged in substantial gainful employment during the period in which she claimed to be disabled. *Id.* at 21. Second, the ALJ found that Ms. Ballou had the following severe impairments: cervical and lumbar degenerative disc disease; pancreatitis, bipolar disorder, and anxiety. *Id.* As part of her analysis, the ALJ found that Ms. Ballou's other alleged impairments were not severe "as they were responsive to treatment, caused no more than minimally vocationally relevant limitations, did not last or were not expected to last at a "severe" level for a continuous period of 12 consecutive months or expected to result in death, or were not properly diagnosed by an acceptable medical source from the alleged onset date." *Id.* at 22. The ALJ specifically contemplated Ms. Ballou's hypertension and heart problems in reaching that determination. *Id.* But at step three, the ALJ found that none of these impairments nor any combination of them met "or medically equal[ed] the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 . . . ." *Id.*

Before proceeding to step four, the ALJ fashioned Ms. Ballou's RFC. *See* 20 C.F.R. § 404.1520(e). After considering the record, the ALJ determined that:

> the claimant has the residual function capacity to perform medium work as defined in 20 CFR 404.1567(c) and 20 CFR 416.967(c) except the claimant only occasionally climb ramps or stairs; never climb ladders/ropes/scaffolds; frequently balance, stoop, kneel, crouch and crawl; and should avoid concentrated exposure to vibration. The claimant can understand, remember and carry out simple tasks and instructions; can have occasional interactions with co-workers, supervisors and the general public; and can tolerate simple changes in a routine work setting.

[R. 7 at 24.]

To make this finding, the ALJ first determined that Ms. Ballou's medically determinable impairments could reasonably be expected to cause her alleged symptoms. *Id.* at 25. But, the

3

ALJ found that Ms. Ballou's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical and other evidence in the record. *Id*. After evaluating Ms. Ballou's statements, treatment records, and the opinion of state agency consultants, the ALJ found that the objective, medical evidence and the record as a whole indicated support for the above RFC. *Id*. at 28. The ALJ emphasized that Ms. Ballou's complaints were not "completely dismissed, but rather, have been included in the residual functional capacity to the extent that they are consistent with the evidence as a whole," which included a consideration of the "location, duration, frequency, and intensity of the claimant's alleged symptoms, as well as precipitating and aggravating factors." *Id*.

Next, the ALJ proceeded to step four. *Id.* She considered the testimony of a vocational expert and concluded that Ms. Ballou would not be able to perform her past relevant work as a bookkeeper. *Id*. Proceeding to step five, the ALJ heard from a vocational expert and determined that there are numerous jobs Ms. Ballou can perform in the national economy, such as checker, order filler, and cleaner. *Id*. at 29. Therefore, the ALJ found that Ms. Ballou is "not disabled." *Id*. at 30.

B

The Court's review of the ALJ's determination is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence" is said to be "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which

[administrative] decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

To decide whether substantial evidence exists, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). A reviewing court is restricted from making factual findings *de novo*, resolving conflicts in the evidence, or making credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). Rather, if the Commissioner's decision is supported by substantial, legitimate evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *Id.* at 714.

Ms. Ballou raises two issues with how the ALJ decided her case. She argues that the ALJ "erred by failing to properly develop the record, finding that Plaintiff has no medically determinable cardiac condition, solely on the basis of her own lay interpretation of raw medical data" and that the ALJ further erred "by finding that Plaintiff's Raynaud's disease is not a severe impairment, as contemplated under 20 C.F.R. §§ 404.1520(c), 416.920(c), especially in view of her finding that Plaintiff retains the capacity to perform medium work." [R. 10 at 1.] According to Ms. Ballou these issues are significant because they would have led to a light exertion limitation in her RFC, had they been properly determined by the ALJ. *Id*. at 13. Consequentially, given Ms. Ballou's age, such a limitation would have led to her being found to be disabled. *Id*.

**1**

The Court notes that, as an initial matter, the plaintiff bears the burden of proof on disability through the first four steps, including proving the existence of any functional limitations. 20 C.F.R. §§ 404.1512, 404.1520(a)(4)(i)-(iv); *see Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010) ("The burden is on the claimant to satisfy the first four steps."). Furthermore, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence" if the ALJ found any condition to be severe. *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003); *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) ("When an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two does not constitute reversible error"). In essence, the severity determination is merely a screening tool that is satisfied once any severe condition has been found. Indeed, the regulations require that, once the ALJ determines that a claimant has at least one severe impairment, the ALJ must consider all impairments – severe and non-severe – in the remaining steps. 20 C.F.R. § 404.1545(e).

Ms. Ballou contends that the ALJ's alleged failure to determine Ms. Ballou's Raynaud's disease as a severe impairment at step two later tainted the ALJ's determination of Ms. Ballou's RFC at step four. [R. 10 at 15-16.] In Ms. Ballou's view, the ALJ failed to properly account for the effect Raynaud's disease has on her extremities, especially her feet, and the ensuing difficulty she has standing for long periods of time. Ms. Ballou's attack on the ALJ's severity determination is really an attack on the ALJ's RFC determination. The ALJ initially considered Ms. Ballou's treatment for Raynaud's disease in the step two determination. [R. 7 at 21-22.] The ALJ, despite Ms. Ballou's assertions, also considered Raynaud's disease its effects on Ms. Ballou's fingers and feet when determining her RFC. [R. 7 at 26-27.] The ALJ specifically

6

referenced primary care records, and a cardiac evaluation by Dr. Thannoli which each refer to Raynaud's disease and Ms. Ballou's accompanying symptoms. *Id*. The ALJ also heard testimony from Ms. Ballou regarding her Raynaud's disease and foot problems. *Id*. at 48, 51, 53. This led the ALJ to conclude

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because the medical evidence of record shows no objective worsening of her existing condition or the onset of any new conditions around the time of her alleged onset of disability. In addition, the claimant's allegations are not supported by any treating provider. Further, the physical clinical findings themselves are not consistent with extreme limitation from pain or with observed functional limitations in initiating and sustaining movements. Further, the claimant was able to engage in routine activities of daily living

*Id*. at 25.  Indeed, at the hearing the ALJ made more reference to Ms. Ballou's Raynaud's disease than even Ms. Ballou's attorney did. *Id*. 41-42, 59. Ms. Ballou may not agree with the conclusions the ALJ reached about her limitations, but there is no question that the ALJ fully considered her Raynaud's disease in the RFC determination.

Nor was the ALJ's determination unsupported by substantial evidence. It is the claimant's burden to establish functional limitations impacting their ability to work, not just to provide diagnoses. *See* 20 C.F.R. § 404.1545(e); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis . . . , of course, says nothing about the severity of the condition."); 20 C.F.R. § 404.1521 (the Agency "will not use [the claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)."). Ms. Ballou did not do so here.

The ALJ also fairly considered the evidence presented in determining Ms. Ballou's RFC. She considered Ms. Ballou's own testimony about her limitations, considered the medical evidence – including primary care reports and cardiac evaluations – present in the record, and a

7

report from a state agency consultant. [R. 7 at 24-28.] Each of these accounted for Ms. Ballou's Raynaud's disease. The ALJ noted that Ms. Ballou was receiving medication for many of her physical ailments, including her Raynaud's disease, and that there was no indication that any side effects would affect her ability to work. *Id*. at 27, 52-53. And, in determining Ms. Ballou's RFC, the ALJ took seriously Ms. Ballou's mental health impairments, including her extreme anxiety. *Id*. at 22-24, 27. Ms. Ballou's RFC ultimately included some accompanying mental limitations. *Id*. at 24. Ms. Ballou may disagree with the ALJ's conclusion, but this Court reviews the record deferentially and substantial evidence supported the ALJ's RFC determination here.

**2**

Ms. Ballou also contends that the ALJ erred by failing to properly develop the record and by finding that Ms. Ballou had no medically determinable heart condition while relying solely on her "lay interpretation" of raw medical data. [R. 10 at 9.] As an initial matter, Ms. Ballou appears to overstate her objection. The ALJ did not explicitly find that Ms. Ballou "had no medically determinable cardiac condition" – rather the ALJ considered her cardiac impairment when discussing Ms. Ballou's impairments that were "non-severe and/or not medically determinable." [R. 7 at 22.] Be that as it may, Ms. Ballou primarily points to the "*Deskin* rule" to support her assertion that the "RFC in the case at bar was impermissibly crafted on the basis of the ALJ's interpretation of raw medical data without any medical source opinion with access to all of the pertinent evidence." [R. 10 at 11.]

The so-called "*Deskin* rule," articulated by the District Court in *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908 (N.D. Ohio 2008) and refined by that same court in *Kizys v. Comm'r of Soc. Sec.*, No. 3:10 CV 25, 2011 WL 5024866 (N.D. Ohio Oct. 21, 2011), essentially states that

an ALJ may make a "commonsense judgment about functional capacity even without a physician's assessment," but only when "the medical evidence shows relatively little physical impairment." *Aarron D. v. Comm'r of Soc. Sec.*, No. 3:22-CV-00588-CHL, 2024 WL 1288230 at *4 (W.D. Ky. Mar. 26, 2024). As a consequence "[w]here the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations (or only an outdated nonexamining agency opinion)…the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing." *Id*.

Much doubt has been cast upon the *Deskin* rule. *See Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ."); *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019) ("No bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding, but the administrative law judge must make a connection between the evidence relied on and the conclusion reached."); *Williams v. Astrue*, No. 1:11-cv-2569, 2012 WL 3586962, at *7 (N.D. Ohio Aug. 20, 2012) ("RFC is for the ALJ to determine, *see* 20 C.F.R. § 416.945(a); and *Deskin* 'is not representative of the law established by the legislature, and [as] interpreted by the Sixth Circuit Court of Appeals.' ") (internal citation omitted); *see also Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). Indeed, this Court, in *Regan v. O'Malley*, No. 5:23-CV-00065-GFVT, 2024 WL 1336443 (E.D. Ky. Mar. 28, 2024), recently rejected application of the *Deskin* rule.

This Court again declines to proceed under the *Deskin* "rule." Ms. Ballou contends that this case is distinguishable from *Mokbel-Aljhami* because "pertinent objective evidence" was

9

"unseen by the State agency" and there is "an absence of any physical assessment by either a treating or examining source." [R. 10 at 12.]  These differences assume that the *Deskin* rule binds this court – it does not – and consequently fail to undermine this Court's skepticism of *Deskin*.  Without *Deskin* there is little to suggest that an ALJ's "lay interpretation" of medical evidence in the record is entirely improper.  The Sixth Circuit has held that the ALJ is charged with evaluating the evidence to determine a claimant's RFC.  *Perry v. Comm'r of Soc. Sec.*, 734 F. App'x 335, 339 (6th Cir. 2018) (quoting *Turk v. Comm'r of Soc. Sec.*, 647 F. App'x. 638, 640 (6th Cir. 2016) ("[T]he determination of a claimant's RFC is a matter for the ALJ alone—not a treating or examining doctor—to decide.")

The ALJ here did so properly.  The ALJ considered significant evidence involving Ms. Ballou's heart condition – primary care records, records of Ms. Ballou's visit with a cardiologist, the results of various tests conducted on Ms. Ballou, and the opinion of state agency consultants with access to a significant portion of Ms. Ballou's past records.  [R. 7 at 22, 26-28.]  The records Ms. Ballou points to as being problematically unexamined by a physician or state agency consultant are from Baptist Health in 2022.  [R. 7 at 1415.]   The ALJ considered those as well. Having already determined that the ALJ was under no requirement to submit these records to a physician for review, the Court further determines that substantial evidence supported the ALJ's determinations as to Ms. Ballou's cardiac condition.  The ALJ considered the results of several prior tests, some of which were evaluated by state agency physicians, and also noted that Ms. Ballou was responsive to medication.  *Id*. at 27-28.  Indeed, Ms. Ballou's reply brief even appears to suggest that the later findings from late 2022 were themselves equivocal or perhaps less severe than earlier evidence.  [R. 17 at 4.]  2021 records from Baptist Health reveal a left ventricular ejection fraction of 69%, which Dr. Thannoli considered to be normal.  [R. 7 at

10

1353.] Dr. Thannoli further noted no chest pain, but a mild impairment of "exercise tolerance." *Id.* The later records showed a similar ejection fraction and similar diagnoses. *Id.* at 1417. The fact that these later records appear so similar to prior records considered by state agency consultants suggests that the ALJ's decision was in fact supported by substantial evidence. While this Court has already rejected the *Deskin* "rule," it seems especially unproblematic for an ALJ to consider medical evidence themselves when that evidence is so similar to prior evidence considered by medical experts.

### III

Ms. Ballou objects to the ALJ's "lay interpretation" of medical evidence and to the ALJ's severity determination, and accompanying RFC, on Ms. Ballou's Raynaud's disease. While the Court sympathizes with Ms. Ballou's difficulties, its role is not to retry her case. Instead, the Court finds that substantial evidence supported the ALJ's opinion. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Ms. Ballou's Motion for Summary Judgment **[R. 10]** is **DENIED**, and the Commissioner's Motion for Summary Judgment **[R. 16]** is **GRANTED**. Judgment in favor of the Commissioner will be entered promptly.

This the 14th day of November 2024.



Gregory F. Van Tatenhove
United States District Judge